### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO.  8:15-cr-133-T-26MAP

PHILIP J. FARLEY, III, and
AURELIJIUS BALTUSIS
_____/

### <u>O R D E R</u>

**BEFORE THE COURT** is Defendants' Joint Motion to Dismiss the Superseding

Indictment and Joint Memorandum with attachments (Dkt. 68), the Government's

Response to Defendants' Joint Motion to Dismiss the Superseding Indictment (Dkt. 69),

and Defendants' Joint Reply Memorandum (Dkt. 75).  After careful consideration of the

allegations of the superseding indictment (Dkt. 49), the submissions of counsel, and the

applicable law, the Court concludes that the motion should be denied.

Defendants seek to dismiss the eight-count superseding indictment alleging

violations of various work practice standards associated with a renovation involving

"regulated asbestos containing material" (RACM).[1]  They allege the following grounds:

---

[1]   The counts include conspiracy to violate the "Hazardous Air Pollutant" section,
42 U.S.C. § 7412, of the Clean Air Act (the CAA) in violation of 18 U.S.C.  § 371 (Count
I), and violating the CAA by (1) failing to thoroughly inspect for the presence of asbestos
as required by 40 C.F.R. § 61.145(a), incorporated in the Pinellas County Code and the
Florida Administrative Code (Count II against Farley), (2) removing RACM without a
properly trained on-site representative (Count III against Farley), (3) failing to properly

(1) the absence of an essential element of the offense, specifically the Government's

failure to allege the particular testing method used; (2) the absence of essential facts of

the offense based on the Government's failure to allege the particular building materials

that constitute RACM; and (3) the nonexistence of a criminal offense described as failure

to conduct a thorough inspection prior to renovation in Count Two.  For the reasons set

forth below, the Court finds the superseding indictment sets forth the essential elements

of 42 U.S.C. § 7413(c)(1), which makes it a crime for failure to comply with the National

Emission Standards for Hazardous Air Pollutants (NESHAP) work practice standards.[2]

An indictment must set forth the essential elements of the offense.  See United

States v. Fern, 155 F.3d 1318, 1324-25 (11th Cir. 1998).  Alleging the elements puts the

defendant on notice of the "nature and cause of the accusation as required by the Sixth

Amendment" and "fulfills the Fifth Amendment's indictment requirement, ensuring that a

grand jury will only return an indictment when it finds probable cause to support all the

necessary elements of the crime."  Fern, 155 F.3d at 1325 (quoting United States v.

Gayle, 967 F.2d 483, 485 (11th Cir. 1992) (en banc), cert. denied, 507 U.S. 967, 113 S.Ct.

---

remove RACM (Count IV against Farley), (4) failing to properly dispose of RACM
(Count V against Farley), (5) failing to properly remove RACM (Count VI against
Baltusis), (6) failing to remove RACM before renovation (Count VII against both
Defendants), and (7) failing to properly dispose of RACM (Count VIII against Baltusis),
all in violation of 42 U.S.C. § 7413(c)(1).  Defendant Baltusis' motion to dismiss Count
VI will be addressed by separate order.

[2]   The Environmental Protection Agency (the EPA) enacted the NESHAP rules
pursuant to § 7412.

1402, 122 L.Ed.2d 775 (1993)).  "The law does not, however, require that an indictment

track the statutory language." Fern, 155 F.3d at 1325 (citing United States v. Stefan, 784

F.2d 1093, 1101 (11th Cir.), cert. denied, 479 U.S. 855, 107 S.Ct. 193, 93 L.Ed.2d 125,

and cert. denied, 479 U.S. 1009, 107, S.Ct. 650, 93 L.Ed.2d 706 (1986)).[3]  The "court

may not look beyond the four corners of the indictment, nor may it properly dismiss an

indictment for insufficient evidence."  United States v. Baxter, 579 F. App'x 703, 705-06

(11th Cir. 2014) (unpublished opinion) (citing United States v. Salman, 378 F.3d 1266,

1268 (11th Cir. 2004) and United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992));

United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006) (stating that the district

court "is limited to reviewing the *face* of the indictment and, more specifically, the

*language used* to charge the crimes.") (emphasis in original).

### Essential Elements and Facts of the Offense

---

[3]   On remand from the Supreme Court, the Eleventh Circuit recently relied on the
principles enunciated in Fern when it remanded and instructed the district court to dismiss
an indictment for failure to allege the necessary element of *mens rea* for a violation of 18
U.S.C. § 875(c) for knowingly transmitting a threatening communication to kidnap or
injure another.  United States v. Martinez, 800 F.3d 1293 (11th Cir. Sept. 3, 2015).  The
element of *mens rea*, however, unlike the alleged missing element in the indictment here,
is generally interpreted as a necessary element in an indictment even though a statute may
not specify the required mental state.  Elonis v. United States, ___ U.S. ___, 135 S.Ct.
2001, 2009, 192 L.Ed.2d 1 (2015); United States v. Godwin-Painter, 2015 WL 5838501,
at *3 (S.D. Ga. Oct. 6, 2015) (distinguishing the application of Martinez to § 875(d)
because subsection (d) contains the specific intent to extort in the language of the statute
and therefore tracking the statutory language in the indictment is sufficient).

Under the definitions listed in 40 C.F.R. § 61.141, "friable asbestos material"

means:

> [A]ny material containing more than 1 percent asbestos as
> determined using the method specified in Appendix E,
> subpart E, 40 C.F.R. part 763, section 1, Polarized Light
> Microscopy, that when dry, can be crumbled, pulverized, or
> reduced to powder by hand pressure.  If the asbestos is less
> than 10 percent as determined by a method other than point
> counting by polarized light microscopy (PLM), verify the
> asbestos content by point counting using PLM.

The challenged language of the indictment is paragraph 8, which provides:

> According to federal law, "regulated asbestos-containing
> material" or "RACM" meant friable asbestos material or
> asbestos-containing material that could become friable as a
> result of renovation activities.  40 C.F.R. § 61.141.  "Friable
> asbestos material" meant any material containing more than
> one percent (1%) asbestos that, when dry, could be crumbled,
> pulverized or reduced to power by hand pressure.  40 C.F.R. §
> 61.141.[4]

Defendants take issue with the Government's failure to allege compliance with Appendix

E and failure to identify the type of testing method used to determine that the material at

issue is in fact RACM.  They argue that the entire first sentence of the definition of

"friable asbestos material" must be alleged in order to include an essential element of the

offense – that RACM must contain more than one percent asbestos "as determined using

the method specified in Appendix E, . . . section 1, [PLM]."  According to Defendants,

---

[4] See docket 49.

only one test method may be used in testing material for friable asbestos, and that method is found in Appendix E.

Looking at the regulatory definition, the first sentence refers to the "method specified in Appendix E."[5] The second sentence of the definition, however, clearly contemplates that more than one method may be used to determine the content of asbestos. It states that if the asbestos content is determined by "a method other than" PLM that renders a content of less than 10 percent, then the material must be verified by PLM. The definition, at the very least, gives pause to a determination that one exclusive testing method exists to determine RACM.[6] Moreover, there is no requirement that the language of a statute, or even a regulation, be tracked, much less only partially which would leave out the second half of the definition.

In addition to the definition of "friable asbestos material" in the regulations, Defendants rely heavily on United States v. San Diego Gas & Electric Company, 2006

_____

[5] Appendix E is divided into two sections: PLM and x-ray powder diffraction (XRD). Each section describes the procedure to be used in obtaining samples, sample preparation, and quantitative analysis.

[6] At least one district court has held that "strict compliance with the testing methods prescribed by NESHAP, including the PLM method, is not necessary as long as the testing methods actually used provide results that are both relevant and credible." United States v. Tucker, 2009 WL 4856225, at *3 (W.D. Mich. Dec. 9, 2009). The Court is well aware that Tucker was not decided on a motion to dismiss the indictment, but rather a motion in limine to exclude the government's samples as not representative of the asbestos content of the roof panels at issue and as not tested in compliance with the NESHAP regulations. The Tucker court noted that the "government is not required to prove the asbestos content of the roof panels using the PLM method exclusively." Id. at *4.

WL 3913457 (S.D. Cal. Nov. 21, 2006).[7]  In San Diego Gas, the district court found the indictment, alleging work practice violations that stemmed from the removal of RACM, insufficient because it did not allege "the elements of RACM" but simply that the material was RACM.  Id. at *2.  The court declared that two elements of RACM were required to be alleged in the indictment: first, the material contained "more than one percent asbestos as determined by the specified test method;" and second, the particular category of RACM such as friable asbestos material.  In a lengthy discussion of rule-making procedures, the court found that the government's application of the "single-layer test" as opposed to the "multi-layer test" method was flawed, and the indictment would be dismissed because the government failed to use the "specified 1990 NESHPA test method."  Finally, the district court found that the credible evidence rule did not excuse the Government from alleging the specific test method in the indictment.

Unlike San Diego Gas, which is not binding precedent on this court, the instant case does not involve an agreement between the Government and the Defendants that a single-layer test was used.[8]  There is no published opinion that relies on, follows, or

---

[7]  After the court dismissed certain counts of an indictment in November 2006, the government re-indicted the defendants.  United States v. San Diego Gas & Elec. Co., 2007 WL 432673, at *2 (S.D. Cal. Dec. 7, 2007) (granting new trial after defendants were tried on the new indictment).

[8]  See United States v. San Diego Gas & Elec. Co., 2009 WL 4824489, at *3 (S.D. Cal. Aug. 31, 2009) (summarizing the history of the case, concluding that "[t]he Court held the single layer test method not subject to rule-making procedures as mandated by the Administrative Procedures Act and thus, the test could not be used in place of the averaging test.").

adopts <u>San Diego Gas</u> in the criminal context.[9]  This Court is also mindful that the

credible evidence rule,[10] which is part of the NESHAP regulations, does not replace the

Federal Rules of Evidence.  On this motion to dismiss an indictment, however, the Court

will not engage in a premature resolution of the merits of the allegations.  If arguably

---

[9]  For criminal cases distinguishing <u>San Diego Gas</u>, <u>see</u> <u>United States v. Sanford, Ltd.</u>, 859 F.Supp.2d 102, (D.C. Cir. 2012) (distinguishing <u>San Diego Gas</u> by stating that "the government [in <u>San Diego Gas</u>] failed to allege that the material at issue contained more than one percent of asbestos, as required by the statute."); <u>United States v. Tucker</u>, 2009 WL 4856225, at *3 (W.D. Mich. Dec. 9, 2009) (disagreeing with <u>San Diego Gas</u> and denying defendant's motion in limine to exclude government's samples as not representative of the material as a whole).  No doubt, there have been criminal prosecutions brought under NESHAP in which the courts did not discuss <u>San Diego Gas</u>. <u>See</u>, <u>e.g.</u>, <u>United States v. Gannaway</u>, 477 F. App'x 618 (11th Cir. 2012) (unpublished opinion) (affirming convictions under the CAA for violations of work practice standards under NESHAP).

A state supreme court, in a civil case, has disagreed with the reasoning of <u>San Diego Gas</u> and taken the opposing view that Part 763, Subpart E, Appendix E, which is the very language that the Defendants here are contending should be in the indictment, provides an adequate  legislative basis for enforcement, notwithstanding the clarifications issued by the EPA, which the court determined were interpretative, rather than legislative, rules.  <u>State v. Harenda Enterprises, Inc.</u>, 746 N.W.2d 25, 40, 307 Wis. 2d 604, 634 (Wis. 2008).  <u>San Diego Gas</u> and <u>Harenda Enterprises</u> address the issue of whether asbestos containing material is regulated if a single layer of a multi-layer material yields greater than one percent asbestos or if the combination of single layers within the multi-layer material must yield greater than one percent asbestos.

[10]  The credible evidence rules provides:

> For the purpose of submitting compliance certifications or establishing whether or not a person has violated or is in violation of any standard in this part, nothing in this part shall preclude the use, including the exclusive use, of any credible evidence or information, relevant to whether a source would have been in compliance with applicable requirements if the appropriate performance or compliance test had been performed.

40 C.F.R. § 61.12(e).

more than one testing method is permitted to test asbestos containing material, then alleging the specific method used for asbestos testing in the indictment is not required by the statute or the regulations.  Viewing the facts alleged in the indictment in the light most favorable to the Government, the Court will not dismiss the case under Rule 12(b) and finds that the allegations are sufficient to charge violations of § 7412.[11]

### Failure to Inspect

Count Two alleges that Defendant Farley "did knowingly fail and cause others to fail to thoroughly inspect the facility where renovation would occur for the presence of asbestos prior to the commencement of renovation in violation of the requirement found at Title 40, Code of Federal Regulations, section 61.145(a) and incorporated by Pinellas County Code . . . ."[12]  Defendants argue that failure to "thoroughly inspect" is not subject to criminal penalties under §§ 7412(h) and 7413(c)(1), because § 61.145(a) is both unconstitutionally vague on its face and as applied to the facts of this case.  For the following reasons, the Court finds Count Two sufficient to charge a criminal offense for failure to thoroughly inspect the facility to determine whether asbestos was present before beginning renovations.

_____

[11]   The Court also finds that the indictment need not specifically identify each type of building material that constitutes RACM.

[12]   The Court has reviewed all of the arguments concerning the Pinellas County Code and finds that the Government is relying on federal law to charge Count Two.  The existence of the Pinellas County Code does not change federal law.

Section 7413(c)(1) of the CAA makes it a crime for any person to "knowingly violate[] any requirement or prohibition of . . . section 7412 of this title, . . ., including a requirement of any rule, order, waiver, or permit promulgated or approved under such section."   Section 7412(h), which is titled "Work practice standards and other requirements," permits the EPA administrator to "promulgate a design, equipment, work practice, or operational standard, or combination thereof" to control hazardous air pollutants such as asbestos.  The National Emission Standards for Asbestos were promulgated in 40 C.F.R. Part 61, Subpart M.  Section 61.145, titled "Standard for demolition and renovation," in subparagraph (a) makes the standard applicable to certain requirements of the owner or operator of a renovation activity, and "prior to the commencement of the demolition or renovation," requires that the owner or operator "thoroughly inspect the affected facility or part of the facility where the demolition or renovation operation will occur for the presence of asbestos."

According to the plain reading of this statutory and regulatory framework,[13] any "requirement" of § 7412, including a requirement of a rule promulgated thereunder, if knowingly violated, forms the basis of a criminal offense.  The fact that the mandate to thoroughly inspect appears in the regulation prior to the RACM and quantity requirements does not change the notice that an owner or operator must inspect before renovations.

---

[13]   See United States v. Pierre-Louis, 2002 WL 1268396, at *3 (S.D. Fla. Mar. 22, 2002) ("In examining the pertinent statutory language, a court cannot look at a word or term in isolation; it must look at the entire statutory context and scheme.").

While the language is placed before the listing in the regulation of work practice standards under paragraph (c), the introductory portion of § 61.145(a) – "[t]o determine which requirements of paragraphs (a), (b), and (c), of this section apply to the owner or operator"– alerts the reader that requirements are contained in paragraph (a). Requirements of § 61.145 are subject to criminal liability pursuant to § 7413, and the Court finds the language sufficient to give fair warning under the rule of lenity.  See United States v. Izurieta, 710 F.3d 1176, 1182 (11th Cir. 2013) (noting the rule of lenity in the case of ambiguity is premised on fair warning and the legislature's province of defining criminal activity).

The case cited to the Court both to substantiate and to discredit the claim that Congress did not authorize criminal liability for failure to thoroughly inspect is Fried v. Sungard Recovery Servs., Inc., 925 F.Supp. 364 (E.D. Pa. 1996).  Fried is a civil case decided on a motion for summary judgment.  The court determined that because a renovation "is not limited to an activity that involves asbestos[,]" the defendant had a duty to inspect its facility regardless of the amount of asbestos.  Fried, 925 F. Supp. at 372. This finding bolsters the Government's reasoning that the duty to thoroughly inspect exists before renovation commences, independent of an owner or operator's prior knowledge of the amount of asbestos in the facility to be renovated.  In any event, the Fried case did not resolve the issue of whether failure to thoroughly inspect is a criminal offense.

-10-

**ACCORDINGLY**, it is therefore **ORDERED AND ADJUDGED** that

Defendants' Joint Motion to Dismiss the Superseding Indictment (Dkt. 68) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on November 10, 2015.


   s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**


<u>COPIES FURNISHED TO</u>:
Counsel of Record