UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                          CASE NO.  8:15-cr-133-T-26MAP

PHILIP J. FARLEY, III, and
AURELIJIUS BALTUSIS
_____/

**O R D E R**

Before the Court is the Defendants' Joint Motion to Exclude the Government's Experts' Opinions and Testimony Related to the Percentage of Asbestos in Samples (Dkt. 87), the Defendants' Request for Daubert Hearing and Oral Argument (Dkt. 88), the Government's Response to Defendants' Motion to Exclude Expert Evidence (Dkt. 92), the Government's Response in Opposition to Defendants' Request for Daubert Hearing and Oral Argument (Dkt. 93), the Defendants' Reply (Dkt. 98), and the Government's Surreply (Dkt. 103). After careful consideration of the parties' submissions, the Court concludes that the motion *in limine* should be denied.

The Defendants' motion seeks *in limine* relief[1] in the form of an order excluding nine expert witnesses' testimony pertaining to the percentage of asbestos in the samples collected from inside and around the property at issue in this case. Defendants argue that the Government's witnesses ignored the dictates of the regulatory process, specifically sections 1.7.1,

---

[1] The term *in limine* "refer[s] to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." Luce v. United States, 469 U.S. 38, 40 n.2, 105 S.Ct. 460, 462 n.2, 83 L.Ed.2d 443 (1984).

1.7.2.1, and 1.7.2.2 of Appendix E,[2] in testing materials from the ceilings of the property. Defendants and the Government disagree on the application of these specific sections to the particular facts of this case. Defendants claim that the Government's samples were unrepresentative of the ceiling materials. Reduced to its essence, the arguments focus on whether the "discrete strata" identified in the sample encompasses the material other than the "popcorn" part of a ceiling to include the plaster or drywall to which it is attached or adhered. Thus, the Court is left to ponder, after studying pages of tedious dissection of regulatory language, whether the layers referred to in section 1.7.2.1, which layers will be "combined to yield an estimate of asbestos content for the whole sample," include the layers of drywall or plaster, or the layers making up the "popcorn" texture.[3] In addition to this, the Court is asked to determine whether the Government's samples were unrepresentative.

At the outset, the Court reiterates what countless other courts have opined: "Motions *in limine* are disfavored, and admissibility questions should be ruled upon as they arise at trial." Kobie v. Fifthian, 2014 WL 1652421, at *1 (M.D. Fla. Apr. 23, 2014) (citing Stewart v. Hooters

---

[2] See 40 C.F.R. pt. 763, subpt. E, app. E, which is referred to simply as Appendix E. Section 1.7.1, titled "Sampling," provides in pertinent part that "[s]amples for analysis of asbestos content shall be taken in the manner prescribed in Reference 5 . . ." Section 1.7.2.1, titled "Gross Examination" under the analysis section, states in part that "[w]hen discrete strata are identified, each is treated as a separate material so that fibers are first identified and quantified in that layer only, and then the results for each layer are combined to yield an estimate of asbestos content for the whole sample." Finally, part of section 1.7.2.2 provides that in sample preparation "attempts may be made to homogenize the sample or eliminate interferences before further characterization."

[3] The Defendants question the consistency of the samples collected based on the differences between the bathroom and kitchen ceilings and the ceilings in other areas of the apartments. See docket 98, p. 13. They claim that the "popcorn" texture was sprayed on drywall for the bathroom and kitchen ceilings and on plaster for the other ceilings.

of Am., Inc., 2007 WL 1752873, at *1 (M.D. Fla. Jun. 18, 2007)).[4]  "Accordingly, if evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context." Id. (citing Stewart). Furthermore, "[d]enial of the motion does not insure that the evidence contemplated by the motion will be admitted at trial.  Instead, denial of the motion means the court cannot determine whether the evidence in question should be excluded outside the trial context." Kobie, 2014 WL 1652421, at *1 (quoting Stewart, which cites United States v. Connelly, 874 F.2d 412, 416 (7th Cir. 1989)).  As the Supreme Court has recognized, "Even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." United States v. Luce, 469 U.S. 38, 41-42, 105 S.Ct. 460, 463, 83 L.Ed.2d 443 (1984).

After carefully reviewing the Defendants' motion and attachments, as well as the attachment to the Government's Response, the Court is wholly unable to make a pretrial determination whether the expert testimony and evidence Defendants seek to exclude would be clearly inadmissible at Defendants' trial in support of its defense theory that the Government's failure to follow Appendix E's gross examination process for multi-layered building materials in the collection and testing of samples forbids conviction.  In applying the examination and testing process outlined by Appendix E to the facts of this case, the Court must neither dismiss the "credible evidence rule" as set forth in 40 C.F.R. §61.12(e) nor the Federal Rules of Evidence. Indeed, the Government correctly argues that the Federal Rules of Evidence determine the admissibility of expert evidence.  At least one district court case has held in the criminal context

---

[4]  See also In re Mirabilis Ventures, Inc., 2011 WL 3236027, at *5 (M.D. Jul. 28, Fla. 2011).

that the NESHAP testing methods need not be rigidly followed so long as the results are both "relevant and credible" and the sampling evidence is not rendered inadmissible. See United States v. Tucker, 2009 WL 4856225, at *3-4 (W.D. Mich. Dec. 9, 2009) (denying motion *in limine* to exclude samples taken from debris of roof because asbestos content need not be proved by PLM method exclusively and evidence of samples and test results should not be excluded on this basis).[5] The time for determining whether the various collection and testing processes used leading up to this prosecution were proper or misleading is best left for the trial setting where questions of foundation, relevancy, and prejudice may be resolved. Consequently, the

---

[5] The Court is well aware of United States v. San Diego Gas & Electric Company, 2006 WL 3913457 (S.D. Cal. Nov. 21, 2006), as noted and discussed in its prior order dated November 10, 2015, denying the motion to dismiss the superseding indictment at docket 79. San Diego Gas was decided on a motion to dismiss the indictment and conceded that the credible evidence rule is "an evidentiary-based rule that assumes a properly alleged indictment." This Court has already found that the superseding indictment sets forth the essential elements of the offense. In any event, even though the San Diego Gas defendants were re-indicted, tried, found guilty, and granted a new trial, that case involved pipe wrap, which differs from the ceiling materials in the instant case. See United State v. San Diego Gas & Electric Co., 2007 WL 4326773 (S.D. Cal. Dec. 7, 2007) (granting new trial); United States v. San Diego Gas & Electric Co., 319 F.App'x 628 (9th Cir. 2009) (unpublished opinion) (affirming the granting of the new trial).

In a different but somewhat analogous situation in the context of a denial of benefits for black lung disease for failure to establish the presence of pneumoconiosis, the Eleventh Circuit reversed the denial and held that the decision was not based on substantial evidence. See Dagnan v. Black Diamond Coal Mining Co., 994 F.2d 1536 (11th Cir. 1993). Although the biopsy report did not meet the stringent requirements for admissibility pursuant to the applicable federal regulation, specifically the lack of a surgical note, the biopsy evidence met the requirements substantially in accordance with the "substantial compliance" modification for miners who died before March 31, 1980. Thus, the report was held properly admitted on the basis of substantial compliance with the regulation. Moreover, the administrative law judge improperly substituted his opinion for those of the experts when he disregarded their diagnoses and ruled out the possibility of pneumoconiosis. This Court must not improperly substitute its judgment for those of the Government's experts on a motion *in limine*, when the sampling and testing are, at the very least, in substantial compliance with Appendix E.

Defendants will be afforded ample opportunity at trial to raise objection to the introduction of the Governments' expert testimony.

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' Joint Motion to Exclude the Government's Experts' Opinions and Testimony Related to the Percentage of Asbestos in Samples (Dkt. 87) is **DENIED.** Defendants' Request for <u>Daubert</u> Hearing and Oral Argument (Dkt. 88) is **DENIED as moot**.

**DONE AND ORDERED** at Tampa, Florida, on April 4, 2016.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record